UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

HARRY BURDICK,

               Plaintiff,

v.

STATE OF NEVADA, et al.,

               Defendants.

Case No. 2:12-cv-01296-RFB-CWH

**ORDER**

## I.     INTRODUCTION

This case is before the Court on a Motion for Summary Judgment filed by Defendants, who are officials employed at High Desert State Prison (HDSP). ECF No. 147. Also before the Court is Plaintiff Harry Burdick's Motion for an Order Compelling Discovery. ECF No. 103. On September 30, 2015, the Court granted Defendants' Motion for Summary Judgment and denied Burdick's discovery motion, and stated that it would issue a written order. ECF No. 163. This Order sets forth the reasoning for those rulings.

## II.    BACKGROUND

Plaintiff Harry Burdick filed this action while he was incarcerated at HDSP. He alleges two counts of deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. In his Third Amended Complaint, Burdick alleges that HDSP officials engaged in a practice of failing to deliver his medications to him in a timely manner when he requested them. ECF No. 97. In Count I of the Third Amended Complaint, Burdick alleges that Dr. Ted Hanf increased Burdick's medication dosages despite knowing that

Burdick was not receiving his medication on time and that Dr. Chang knew of Dr. Hanf's conduct and did nothing to prevent it. In Count II, Burdick alleges that Nurse Sonja, Nurse Norain, Nurse Patti, Nurse Marig, Assistant Warden Wickman, Nurse Cindy, Nurse Doni Jennings, and Linda Adams either directly participated in the practice of delivering Burdick's medication late, or were made aware of the practice and failed to prevent it. As a result of consistently not receiving medications on time and having his dosages increased, Burdick alleges that he suffered liver damage as well as redness in his eyes, the yellowing of his fingernails and toenails, sores on his body, and black-and-blue marks that appear after he is injected for tests or shots. ECF No. 97 at 6.

Based upon the parties' submissions, the Court finds the following facts to be undisputed.[1]

Burdick was in the custody of NDOC and incarcerated at HDSP from June 6, 2011 to May 9, 2013. He was then incarcerated at Clark County Detention Center (CCDC) from May 9, 2013 to April 23, 2014. He was again incarcerated at HDSP from April 23, 2014 until he was released from NDOC custody in November 2014. When Burdick arrived at HDSP in June 2011, his initial examination included diagnoses of hypertension, coronary artery disease, hyperlipidemia, valvular disease, and diabetes mellitus. Mot. Summ. J. Ex. B at B0211, ECF No. 148 (filed under seal). Burdick was prescribed several medications in 2011 and 2012 at HDSP, including Atenolol, Hydrochlorothiazide, Prednisone, Nitrostat, Gemfibrozil, and aspirin. Id. at B0227-230.

On July 30, 2012, Defendant Hanf, a doctor employed by NDOC and working at HDSP, ordered that rather than designating any of Burdick's medications as KOP ("keep on person"), all of Burdick's medications should be administered by a "pill call" method, by which a nurse administers medications each day. Id. at B0069. These medications included Metformin, Atenolol, and what appears to be a lipid medication. Id. On August 27, 2012, Dr. Hanf ordered that Burdick could keep his nitroglycerin tablets and Tylenol on his person rather than take them

---

[1] These findings were also stated on the record at the hearing held on these motions on August 19, 2015. Neither party disputed these facts at the hearing.

at pill call. Id. at B0070.

On September 8, 2014, this Court issued an order directing Defendants to provide a report to the Court detailing the dates when Burdick was prescribed medication, the dates he was due to have the medication refilled, and the dates he received the medication. ECF No. 92. The results of this report are described in detail in Section IV.B.1 below.

The Court's Order of September 8, 2014 also directed Defendants to ensure that a physician employed or contracted by NDOC conduct a full physical examination of Burdick and review all of his medical records, including those on file at HDSP and those received from CCDC. Id. In response to this Order, Burdick was seen by Dr. Romeo Aranas, a physician employed by NDOC, on September 17, 2014 at HDSP. Mot. Summ. J. Ex. B at B0211. Dr. Aranas noted that Burdick had undergone laboratory examinations eight times between June 2011 and April 2013 and that these examinations included a comprehensive metabolic panel, complete blood count, and liver function tests. Id. In connection with the examination ordered by the Court, Dr. Aranas ordered a full set of blood work to be done on Burdick. Id. at B0212. Dr. Aranas found that all laboratory reports were normal except for elevated blood sugar and triglycerides, and found no evidence of liver disease from Burdick's lab reports or from his examination of Burdick. Id.

With respect to Burdick's medications, Dr. Aranas concluded that Burdick may have received them late on some occasions "but that did not cause any problems for him." Id. Dr. Aranas stated that Burdick's medications were to treat hypertension, diabetes, and high lipids. Id. Finally, Dr. Aranas noted that at his most recent previous physical examination on April 23, 2014, Burdick refused to take medications to treat his high blood pressure and diabetes mellitus that had been recommended to him. Id.

**III.   LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

1    law." Fed. R. Civ. P. 56(a). When considering the propriety of summary judgment, the court

2    views all facts and draws all inferences in the light most favorable to the nonmoving party.

3    Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

4         Where a party without the ultimate burden of persuasion at trial moves for summary

5    judgment, it has the initial burden of producing either "evidence negating an essential element of

6    the nonmoving party's claim . . . or show that the nonmoving party does not have enough

7    evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire

8    & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). If the

9    moving party meets this initial burden, the nonmoving party "must produce enough evidence to

10   support its claim" in order to avoid summary judgment being granted against it. Id. at 1103.

11

12   **IV.    DISCUSSION**

13        After reviewing the parties' briefs and the evidence in the record, the Court concludes

14   that summary judgment must be granted in favor of Defendants. The Court also denies Burdick's

15   Motion to Compel Discovery for the reasons discussed below.

16        **A.  Applicable Law**

17        To establish an Eighth Amendment claim against prison officials for medical treatment,

18   an incarcerated plaintiff must show deliberate indifference to his serious medical needs. Peralta

19   v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104

20   (1976)). The Ninth Circuit has established a two-part test for deliberate indifference. First, the

21   plaintiff must establish a serious medical need, meaning that failure to treat the condition could

22   result in "significant injury or the unnecessary and wanton infliction of pain." Id. (quoting Jett v.

23   Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation omitted)). Second, the plaintiff

24   must demonstrate the defendant's deliberate indifference to the need, meaning that the prison

25   official "knows of and disregards an excessive risk to inmate health." Id. (quoting Farmer v.

26   Brennan, 511 U.S. 825, 837 (1994)). The defendant's indifference to or interference with the

27   plaintiff's medical care must be intentional; negligence is not enough to state a deliberate

28   indifference claim. Jett, 439 F.3d at 1096. Further, the plaintiff must show that harm resulted

from the defendant's indifference, although the harm need not necessarily be substantial. Id.

**B. Analysis**

*1. Defendants' Motion for Summary Judgment*

Viewing the evidence in the light most favorable to Burdick, the Court finds that he has not produced evidence to establish all of the elements of his deliberate indifference claims and that summary judgment must therefore be granted in Defendants' favor.

First, assuming Burdick has established a serious medical need, he has not demonstrated that Defendants were deliberately indifferent to that need. Defendants submitted a report detailing the instances when Burdick received his medication on time and when he did not, regardless of whether he submitted a request to have the medication refilled, from August 1, 2011 to September 4, 2014.[2] Defs.' Mot. Summ. J. Ex. B at B0227-0230. Defendants' report showed that in 39 out of the 61 instances in which the pharmacy filled Burdick's prescription, he received his medication on or before the expected refill date. In seven out of the remaining 22 instances in which Burdick received the medication after the expected date, Burdick requested the refill either after the date had passed or just one day before the expected date.[3] Id. In an additional three instances, the medication arrived one day after it had been prescribed by a doctor. Id. In seven other instances, Defendants state (and Burdick does not dispute) that Burdick still had medication in his possession from previous refills. Id. This leaves five instances (out of 61) in which Burdick received his medication late and where the untimeliness can be attributed to Defendants' failure to act.[4] While five late deliveries of medication over the course of four

---

[2] This report was ordered by the Court in connection with Burdick's previous request for a preliminary injunction hearing. See Order, ECF No. 92; Defs.' Sealed Filings, ECF No. 107.

[3] In addition, in the instances in which Burdick requested medication one day prior to the expected refill date, he received the medication three days or less after the expected date. Id.

[4] Defendants' report also states that it is "unknown" whether one delivery of medication (a refill of Atenolol delivered on July 2, 2012) was delivered on time or not. Defendants state that they did not know the amount of pills Burdick had in his possession at that time because they discovered that he was taking this medication improperly. Id. at B0229 n.11-12. Under these circumstances, the Court cannot conclude that this delayed delivery of Atenolol was deliberately indifferent. Even if the Court were to find that Defendants failed to timely deliver this refill of Atenolol to Burdick, it would not change the Court's conclusion that Burdick has not established deliberate indifference.

1    years of consistent refills may indicate negligence on the part of Defendants, it does not rise to

2    the level of deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)

3    ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate

4    a prisoner's Eighth Amendment rights.") (citation and internal quotation marks omitted); Wood

5    v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("isolated occurrences of neglect" do not

6    rise to the level of deliberate indifference).

7         Second, even if Burdick were able to demonstrate that Defendants were deliberately

8    indifferent to his serious medical needs, he has produced no evidence showing that harm resulted

9    from that indifference. In fact, the medical evidence in this case demonstrates the opposite. On

10   September 17, 2014, in response to an order from this Court following a hearing on Burdick's

11   motion for a temporary restraining order or preliminary injunction, Burdick was examined by Dr.

12   Romeo Aranas, a physician employed by NDOC. Mot. Summ. J. Ex. B at B0211. Dr. Aranas

13   also reviewed all of Burdick's medical records from his time in custody at HDSP and CCDC

14   from June 2011 to August 2014. In connection with his examination, Dr. Aranas ordered a full

15   set of blood work to be done on Burdick. Id. at B0212. As discussed in the Court's findings of

16   undisputed fact, Dr. Aranas found that all laboratory results for Burdick were normal, including

17   liver functioning, except for elevated blood sugar and triglycerides. Id. Dr. Aranas also stated

18   that Burdick may have received his medications late on some occasions, "but that did not cause

19   any problems for him." Id. The undisputed evidence shows that Burdick's liver functioning is

20   normal. Burdick has not presented any evidence that he suffered harm caused by Defendants'

21   late deliveries of medication.[5] Therefore, the Court concludes that summary judgment must be

22   granted in favor of Defendants on both of Burdick's deliberate indifference claims.

23        In their motion, Defendants also argued that Burdick failed to exhaust his administrative

24   remedies. At the hearing held on Defendants' Motion to Dismiss on September 4, 2014, the

25   _____

26        [5] Even if Burdick were to produce evidence that he had been harmed (for example,
     through elevated levels of blood sugar that were not present prior to 2011), Burdick's claims
27   would likely fail on the issue of causation because Burdick knowingly refused to take his
     prescribed medication beginning in May 2013. See Mot. Summ. J. Ex. B at B0326, B0328
28   (signed release forms acknowledging Burdick's refusal of insulin and other medication related to
     blood sugar).

- 6 -

1    Court expressed its concern regarding the lack of clarity regarding how repeated emergency and

2    first-level grievances fit into Defendants' grievance framework.[6] However, as summary

3    judgment is granted on the merits of Burdick's deliberate indifference claims, the Court declines

4    to reach the issue of exhaustion at this time.

5                          *2.   Burdick's Motion to Compel Discovery*

6            The Court has also considered the arguments raised in Burdick's Motion to Compel

7    Discovery. ECF No. 103. This motion is denied for several reasons. First, Defendants stated in

8    their response brief (and Burdick did not dispute) that they mailed responses to Burdick's

9    Request for Production of Documents on September 19, 2014. ECF No. 113. Second, Burdick

10   did not attach a statement to his motion certifying that the parties were unable to resolve their

11   discovery disputes without court action, as required by Local Rule 26-7(b). Further, any

12   documents requested in Burdick's motion other than his medical records—which have been fully

13   produced by Defendants, see ECF Nos. 94-96—would not bear upon the Court's findings that

14   Defendants were not deliberately indifferent to Burdick's medical needs and that Burdick has

15   produced no evidence of harm as a result of Defendants' actions.

16

17   . . .

18   . . .

19   . . .

20   . . .

21   . . .

22   . . .

23   . . .

24   . . .

25   . . .

26   . . .

27   _____

28        [6] The Court ultimately denied Defendants' Motion to Dismiss without prejudice pursuant
     to <u>Albino v. Baca</u>, 747 F.3d 1162 (9th Cir. 2014), which was decided after the Motion to Dismiss
     was filed. ECF No. 93.

V.      CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff Harry Burdick's Motion for an Order Compelling Discovery (ECF No. 103) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No 147) is GRANTED. The Clerk of Court is instructed to enter judgment in favor of Defendants and close this case.


DATED: January 4, 2016.

_____

**RICHARD F. BOULWARE, II**
**United States District Judge**